**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Wenokur, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>AXA Equitable Life Insurance Company,<br><br>　　　　　Defendant. | No. CV-17-00165-PHX-DLR<br><br>**ORDER** |

Plaintiffs are Jeremy Wenokur and Secondary Life Three, LLC (SLT). Defendant is AXA Equitable Life Insurance Company (AXA). At issue is AXA's Motion to Transfer Venue or, in the Alternative, to dismiss Plaintiffs' First Amended Class Action Complaint to the extent Plaintiffs claim an alleged breach of the implied covenant of good faith and fair dealing. (Doc. 31.) The motion is fully briefed.[1] For the following reasons, AXA's Motion to Transfer Venue is granted and this matter is transferred to the Southern District of New York.[2]

## **BACKGROUND**

This case presents a dispute over the propriety of an increase in cost of insurance (COI) rates. The COI rates at issue also are implicated in a separate case brought by

---

[1] AXA's request for oral argument is denied because the issues are adequately briefed and oral argument will not assist the Court in resolving the pending motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] Plaintiffs' Motion to Stay is denied as moot. (*See* Docs. 34, 43.)

Brach Family Foundation, Inc. (Brach) against AXA in the Southern District of New York, *Brach Family Foundation, Inc. v. AXA Equitable Life Insurance Co.*, No. 16-cv-00740-JMF (New York Litigation). For context, the Court will discuss each case before reaching the merits of AXA's motion.

**I. Allegations in the Amended Complaint**[3]

The policies at issue derive from an AXA product line called Athena Universal Life II (AUL II). Unlike other whole life insurance policies that require fixed monthly premium payments, the AUL II policies allow policyholders to pay only the minimum amount of premiums necessary to keep the policies in force. AXA markets the AUL II policies as a "flexible premium universal life insurance policy," where the policyholder can, within limits, "make premium payments at any time and in any amount."

All AXA policies in the AUL II product line contain the same common language about how the COI rates will be determined: "We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in the 'Changes in Policy Cost Factors' provision." The "Changes in Policy Cost Factors" provision states:

> Changes in policy cost factors (interest rates we credit, cost of insurance deductions and expense charges) will be on a basis that is equitable to all policyholders of a given class, and will be determined based on reasonable assumptions as to expenses, mortality, policy and contract claims, taxes, investment income, and lapse. . . . Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which the policy is delivered.

Wenokur, a resident of Utah, is the owner of an AUL II life insurance policy (Wenokur Policy). The Wenokur Policy was issued by AXA in Arizona in July 2006, and currently has a face value of $5 million. At issuance, the insured was age 75. SLT, a Delaware limited liability company with a principal place of business in Rockville,

---

[3] The following information is taken from the First Amended Complaint (Doc. 26) and accepted as true for purposes of this order. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Maryland, also is the owner and beneficiary of an AUL II life insurance policy (SLT Policy). The SLT Policy was issued by AXA in Florida in April 2006, with a current face value of $5 million. At issuance, the insured was age 79. AXA is incorporated and headquartered in New York.

Plaintiffs allege that AXA unlawfully increased their COI rates. Specifically, on or about October 1, 2015, AXA announced that, beginning in 2016, it would increase the COI rates from AUL II policies with issue ages of 70 or older and with current face amounts of $1 million and higher (COI Increase). AXA attributed the COI Increase to less favorable "future mortality and investment experience" over the past few years.

In January 2017, Plaintiffs initiated this action asserting two causes of action. Count I alleges that AXA materially breached the AUL II policies by increasing COI rates inequitably and based on factors not listed in the policies. Count II alleges that, by increasing the COI rates based on an unreasonable interpretation of the AUL II policies, AXA violated the implied covenant of good faith and fair dealing.

**II. The New York Litigation**

In February 2016, almost a year before Plaintiffs initiated this lawsuit, Brach brought suit against AXA in the Southern District of New York, asserting breach of contract and misrepresentation in violation of New York Insurance Law, Section 4226. According to its Second Amended Complaint (Doc. 35-3), Brach is the owner of an AUL II policy that was subject to the COI Increase and seeks to represent all similarly situated owners of life insurance policies issued by AXA. Two separate actions arising out of the COI Increase—originally filed against AXA in the Central District of California—have since been transferred to the Southern District of New York. (Doc. 41.)

**III. AXA's Motion**

AXA moves pursuant to 28 U.S.C. § 1404 and Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure to transfer venue to the Southern District of New York. Alternatively, AXA moves the Court, pursuant to Rule 12(b)(6), to dismiss the First Amended Complaint to the extent Plaintiffs claim an alleged breach of the implied

covenant of good faith and fair dealing. Because the Court finds that a transfer of venue to the Southern District of New York is appropriate, it need not address Rules 12(b)(2) and 12(b)(3) and will reserve judgment on the Rule 12(b)(6) question.

## **LEGAL STANDARD**

For the convenience of the parties and witnesses, and in the interests of justice, 28 U.S.C. § 1404(a) allows a district court to transfer a civil action to any district in which the case originally could have been brought. Section 1404(a) therefore requires the Court to make two findings: (1) the transferee court is one in which the case could have been brought and (2) the convenience of the parties and witnesses and the interests of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). The movant bears the burden of showing that a transfer is warranted. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

## **DISCUSSION**

### **I. Propriety of Venue in the Southern District of New York**

Pursuant to 28 U.S.C. § 1391(b):

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For venue purposes, a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). AXA is incorporated and headquartered in New York, and admits that it is subject to personal jurisdiction there. AXA therefore argues that Plaintiffs could have brought this action in

the Southern District of New York because AXA resides there for venue purposes. The Court agrees. This case could have been brought in the Southern District of New York because AXA is subject to personal jurisdiction there.

**II. Convenience**

When determining whether the convenience of the parties and witnesses favor a transfer, a court weighs multiple factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). On balance, the Court finds that these factors weigh in favor of transfer.

As to the first factor, Plaintiffs allege that AXA violated the AUL II policies, which were issued in Arizona as part of the Wenokur Policy and in Florida as part of the SLT Policy. Though the parties do not agree on where the policies were negotiated and executed, it is reasonable to infer that these activities occurred either in Arizona or Florida, where the two policies were issued, or in New York, where AXA is incorporated and headquartered. The Court finds, however, that this factor is of little importance. Indeed, though the location where the policies were negotiated and executed might inform the analysis of other factors—for example, the state most familiar with the governing law, the parties' contacts with the forum, and the ease of access to proof—it is not clear what independent significance this factor has that would make Arizona a more convenient forum. Accordingly, the Court finds this factor of little importance.

The second factor is neutral. Only Wenokur's claims are governed by Arizona state law. SLT's claims are governed by Florida state law. Although this Court might be more familiar with Arizona law than the Southern District of New York, there is no reason to believe it is more familiar with Florida law. Federal courts routinely are tasked

with applying the laws of other states. Moreover, because this is a putative nationwide class action for breach of contract, many states' laws are likely to apply. Nothing about this factor suggests that the Southern District of New York would be a less convenient forum.

Generally, the third factor will almost always weigh against a transfer of venue. Plaintiffs chose to litigate in Arizona and "[c]ourts do not lightly disturb a plaintiff's choice of forum." *Sidi Spaces LLC v. CGS Premier Inc.*, No. CV16-01670-PHX-DGC, 2016 WL 3654306, at *2 (D. Ariz. July 6, 2016). Although this factor is generally given significant weight, it is afforded less deference when, as here, the action is brought as a nationwide putative class action. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Moreover, "a plaintiff's choice is also given less deference when the plaintiff resides outside of the chosen forum." *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205-YGR, 2014 WL 715082, at *3 (N.D. Cal. Feb. 14, 2014). Here, neither Plaintiff resides in Arizona—Wenokur resides in Utah, and SLT is incorporated in Delaware with its headquarters in Maryland. Under these circumstances, the Court affords the Plaintiffs' choice of forum minimal weight.

The fourth and fifth factors—which pertain to the parties' contacts with the forum, generally and in connection with the specific cause of action—weigh in favor of transfer. Plaintiffs allege that because "AXA did business totaling approximately $10 million in Arizona in 2016" it has significant contacts with the forum. (Doc. 35 at 10.) Although Plaintiffs have demonstrated that AXA has some contacts with Arizona, Plaintiffs' showing is insufficient to outweigh AXA's significantly greater contacts with New York, which yields $162 million. As neither Wenokur nor SLT resides in Arizona, Plaintiffs have minimal contacts with the forum. Plaintiffs contend that "Wenokur's contract claims also establish contacts in this District." (*Id.* at 7.) Although the Wenokur Policy was issued in Arizona, Plaintiffs' claims center not on the formation of the policies, but instead whether AXA, acting through employees in New York City, breached its contracts with policyholders when it increased COI rates. Moreover, AXA has offered

evidence that correspondence between AXA and Plaintiffs regarding the COI Increase was sent to Nevada, Utah, and Maryland. (Doc. 31 at 14.) On balance, these contacts weigh in favor of transfer.

Finally, the sixth through eighth factors also weigh in favor of transfer. Plaintiffs contend that litigating this matter in New York would merely shift the costs of litigation from AXA to Wenokur because Plaintiffs and any witnesses likely would need to travel to trial in New York. (Doc. 35 at 10.) If Plaintiffs resided in Arizona, the Court might agree. But Plaintiffs would need to travel even if the case were tried in Arizona because they both reside out of state. Moreover, the COI Increase is already at issue in the earlier-filed New York Litigation, to which AXA is also a party. Litigation costs likely will be lower for all parties if both cases are tried together. Finally, AXA contends that relevant documentary proof, AXA employees, and primary material witnesses are located in New York, namely, the primary regulator who approved the COI Increase. (Doc. 31 at 13.) Comparatively, Plaintiffs have not identified a single non-party witness who could not be produced in New York.

## III. Interests of Justice

Importantly, the convenience factors enumerated by the Ninth Circuit are not exhaustive, nor are they relevant to all cases. Instead, courts have discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness[.]" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). In addition to considering the convenience to the parties and witnesses, courts must assess whether the interests of justice would be served by a transfer of venue. Such is the case here because trying this matter and the New York Litigation separately will needlessly duplicate judicial resources and present the risk of conflicting results.

Plaintiffs seek to represent an identical putative class of AUL II policyholders and assert a nearly identical breach of contract claim against AXA based on the same COI Increase.[4] "As a general rule, cases should be transferred to districts where related

---

[4] The Court also notes that it lacks personal jurisdiction over the claims of putative

- 7 -

actions are pending." *Impra Inc. V. Quinton Instruments Co.*, No. CIV-90-0383 PHX WPC, 1990 WL 284713, at *2 (D. Ariz. June 26, 1990); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) ("There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."). The New York Litigation is more than one year old and far more procedurally advanced—"there has been extensive motion practice [and] discovery is well under way with thousands of documents already having been exchanged by the parties."[5] (Doc. 31 at 10.) Of the four actions arising out of the COI Increase, Plaintiffs' is the only action pending in a different district. As noted by the Judicial Panel on Multidistrict Litigation, "[AXA]'s pending motion . . . has the potential to eliminate the multidistrict character of this litigation and streamline the litigation without resort to the Section 1407 framework." (Doc. 42 at 2.)

The Court recognizes that Plaintiffs' complaint and the New York Litigation include one additional claim for relief that the other does not have. Plaintiffs contend that their decision to "pursue different theories of liability argues strongly for keeping their cases separate." (Doc. 35 at 12.) The Court disagrees. *See Morrow v. Vertical Doors, Inc.*, No. CV 09-0256-PHX-DGC, 2009 WL 1698560, at *5 (D. Ariz. June 17, 2009) (finding that the plaintiff's desire to pursue a different legal strategy did not defeat the

---

class members with no connection to Arizona and therefore would not be able to certify a nationwide class. *See Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*, -- U.S. --, 137 S. Ct. 1773 (2017).

[5] Transfer is also warranted under the first-to-file rule. The first-to-file rule "allows a district court to transfer, stay or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). In determining whether the first-to-file rule applies, the court considers the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). All three criteria are met in this case. The New York Litigation was filed almost a year before Plaintiffs' action; Plaintiffs seek to certify an identical nationwide class of AUL II policyholders; and the claims asserted in the Plaintiffs' complaint and in the New York Litigation substantially overlap. *See Kohn Law Grp.*, 787 F.3d at 1240-41(explaining that to warrant transfer under the first-to-file rule the issues and parties in both cases "need not be identical, only substantially similar . . . [courts] look at whether there is substantial overlap between the two suits.").

general rule favoring transfer to districts where related actions were pending). Although the New York Litigation involves an additional cause of action, it also includes a breach of contract claim. Moreover, Brach's additional claim of misrepresentation concerns the propriety of the COI Increase, which likely will implicate similar facts and evidence as Plaintiffs' breach of contract and implied covenant claims. The Southern District of New York's familiarity with the issues is likely to improve efficiency and reduce the cost of litigation.

## **CONCLUSION**

For the foregoing reasons, the Court finds that this case could have been brought in the Southern District of New York because AXA is subject to personal jurisdiction in that district. AXA has shown that the Ninth Circuit's enumerated convenience factors weigh in favor a transfer. Additionally, the interests of justice strongly support a transfer to the Southern District of New York, where this case and the New York Litigation may be resolved efficiently together. Accordingly,

**IT IS ORDERED** that AXA's Motion to Transfer Venue or, in the Alternative, for Partial Dismissal of Plaintiffs' First Amended Class Action Complaint (Doc. 31) is **GRANTED IN PART** as explained herein. This matter is hereby transferred to the Southern District of New York.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay (Doc. 34) is **DENIED** as moot.

Dated this 2nd day of October, 2017.

_____
Douglas L. Rayes
United States District Judge